UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number:  12-23327-CIV-MORENO

JULINA BELIZAIRE, as Personal Representative
of the Estate of GIBSON BELIZAIRE, deceased,

      Plaintiff,

vs.

CITY OF MIAMI, MIGUEL A. EXPOSITO, in
his official capacity, GEORGE DIAZ, POLICE
OFFICER ERIC GUZMAN, and POLICE
OFFICER PIERRE CAZASSUS,

      Defendants.

_____/

### ORDER GRANTING DEFENDANT OFFICERS' MOTION TO DISMISS, GRANTING DEFENDANT EXPOSITO'S MOTION TO DISMISS, AND GRANTING IN PART DEFENDANT CITY OF MIAMI'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Miguel A. Exposito's Motion to

Dismiss **(D.E. No. 24)**, filed on **October 29, 2012**, Defendant City of Miami's Motion to Dismiss

Second Amended Complaint **(D.E. No. 29)**, filed on **November 2, 2012**, and Defendant Police

Officers' Motion to Dismiss Second Amended Complaint **(D.E. No. 35)**, filed on **November 26,**

**2012**.  Plaintiff Julina Belizaire, acting as the personal representative of the estate of her son Gibson

Belizaire, initiated this suit claiming that the use of deadly force against her son was both tortious

and in violation of Mr. Belizaire's Fourth Amendment rights.  Defendants in turn filed three motions

to dismiss all seven counts of Ms. Belizaire's complaint.  For the following reasons, the Court grants

Defendant Officers' motion to dismiss, grants Defendant Exposito's motion to dismiss, and grants

in part Defendant City of Miami's motion to dismiss.  Specifically, the Court dismisses Counts IV,

V, VI, and VII on qualified immunity grounds. In addition, the Court dismisses Count II as the theory of negligent retention under Florida law requires that a defendant commit a tortious act outside the scope of employment in order to trigger liability. The Court will resolve the challenges to Counts I and III at a later time.

## I. FACTUAL BACKGROUND

On August 14, 2010, officers of the Miami Police Department answered a 911 call regarding an alleged domestic dispute. At approximately 12:50 p.m., the officers intercepted Gibson Belizaire in response to the call.[1] During this confrontation, Mr. Belizaire was "suspected of having fired a gun in the direction of [the] . . . officers." Pl.'s Second Am. Compl. ¶ 10. Mr. Belizaire then fled from the scene, retreating to a vacant lot behind an automobile repair shop at the corner of the intersection. He remained there for over an hour and a half.

At approximately 2:32 p.m., Miami Police Department officers, along with canine units and SWAT teams, established a perimeter around the repair shop and the vacant lot. These officers included Defendants George Diaz, Eric Guzman, and Pierre Cazassus. Cutting the suspect off from any avenues of escape, the police perimeter essentially backed Mr. Belizaire up against the exterior wall of the repair shop.

At no time during this standoff did the police request that Mr. Belizaire drop any weapons he had and surrender himself peacefully. Instead, the officers without warning fired approximately 130 rounds at Mr. Belizaire. Rounds fired by Officers Diaz, Guzman, and Cazassus struck Mr. Belizaire in the top of his head and the side of his temple, killing him.

---

[1] The Court only presents those facts offered in the second amended complaint. Consequently, details not included in the complaint, such as the exact location of the confrontation between Mr. Belizaire and the police, are not included here.

Plaintiff Julina Belizaire, Gibson's mother and personal representative of his estate, has now filed this suit against former Chief of Police Miguel A. Exposito, the City of Miami, and Officers Diaz, Guzman, and Cazassus.  In her second amended complaint, Ms. Belizaire asserts seven counts against Defendants, all stemming from the officers' use of deadly force against her son.  Counts I and II consist of Florida tort law claims against the City of Miami for battery and negligent retention, respectively.  Additionally, Ms. Belizaire alleges in Count III that the City of Miami has violated 42 U.S.C. § 1983 by adopting an unofficial policy condoning the use of excessive force by its police officers in violation of the Fourth Amendment, a policy that subsequently led to Mr. Belizaire's death.  Similarly, Ms. Belizaire maintains in Count IV that Exposito violated 42 U.S.C. § 1983 during his tenure as chief of police by both adopting an unofficial policy tolerating excessive force and failing to address a history of widespread abuse by his officers.  Ms. Belizaire contends that Exposito's deliberate indifference to constitutional rights led to the use of excessive force against her son in violation of the Fourth Amendment. Finally, Ms. Belizaire asserts in Counts V, VI, and VII that Officers Diaz, Guzman, and Cazassus violated the Fourth Amendment and 42 U.S.C. § 1983 through their use of excessive and deadly force against her son.

Defendants have now filed three separate motions to dismiss Ms. Belizaire's second amended complaint.  The City of Miami and Exposito have filed individual motions to dismiss Counts I through IV, primarily arguing that the Court should dismiss the counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Likewise, Officers Diaz, Guzman, and Cazassus have jointly filed a single motion to dismiss Counts V, VI, and VII for failure to state a claim under Rule 12(b)(6).  Exposito and the officers therefore maintain that they are

entitled to qualified immunity.

Because the officers' conduct lies at the heart of Ms. Belizaire's claims, the Court will address their motion to dismiss first. The Court will then proceed to the related § 1983 arguments associated with Exposito's motion to dismiss Count IV. Finally, the Court will discuss the City's challenges to the state law negligent retention claim in Count II.

## II. LEGAL STANDARD

Under Rule 8, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When ruling on a motion to dismiss under Rule 12(b)(6), a court must view the complaint in the light most favorable to the plaintiff and assume the veracity of well-pleaded factual allegations. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). However, this tenet does not apply to legal conclusions, and such conclusions "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Though a proper complaint "does not need detailed factual allegations," it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At a minimum, a plaintiff must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In other words, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal

evidence" of the required element. *Twombly*, 550 U.S. at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.  DISCUSSION

### A.  *Officers Diaz, Guzman, and Cazassus's Motion to Dismiss Counts V, VI, and VII*

In their motion to dismiss, Officers Diaz, Guzman, and Cazassus contend that Ms. Belizaire has failed to state a claim of excessive and deadly force in violation of the Fourth Amendment and 42 U.S.C. § 1983.  Correspondingly, since Ms. Belizaire cannot allege a constitutional violation in Counts V, VI, and VII, they insist that they are entitled to qualified immunity.  Alternatively, the officers assert that qualified immunity applies even if Ms. Belizaire has sufficiently alleged a constitutional violation since her complaint fails to allege the violation of a clearly established right.

Under § 1983, "[a]ny person acting under color of state law who violates a constitutional right of another is liable for the injured party's losses." *See Rivas v. Figueroa*, No. 11-23195-Civ-SCOLA, 2012 U.S. Dist. LEXIS 55633, at *5 (S.D. Fla. Apr. 19, 2012) (citing 42 U.S.C. § 1983).  For civil rights actions brought pursuant to § 1983, the doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Since the purpose of the doctrine is to "allow government officials to carry out their discretionary duties without fear of personal

liability," *Steen v. City of Pensacola*, 809 F. Supp. 2d 1342, 1348 (N.D. Fla. 2011), qualified immunity protects "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Additionally, "it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003).

In resolving the matter of qualified immunity, courts employ a multi-step, burden-shifting analysis. As an initial matter, the public official must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010). In this case, Ms. Belizaire does not contest the fact that Officers Diaz, Guzman, and Cazassus were acting within the scope of their discretionary authority when they shot her son.

Having established that a defendant was acting within his or her discretionary authority as a public official, the burden then "shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. First, the court must determine "whether the facts alleged make out a violation of a constitutional right." *See Steen*, 809 F. Supp. 2d at 1349. Second, the Court must analyze "whether that right was 'clearly established' at the time of the defendant's alleged misconduct." *Id.*

Regarding the first prong of the inquiry, Ms. Belizaire alleges in her complaint that the officers' use of excessive and deadly force violated her son's right under the Fourth Amendment to be free from unreasonable seizure. For purposes of this motion, the Court will presume that Ms. Belizaire has adequately stated a claim for a violation of the Fourth Amendment. The Court therefore turns to the officers' contention that Ms. Belizaire has failed to allege the violation of a

clearly established constitutional right.

In analyzing the second half of a plaintiff's burden under the qualified immunity analysis, a court must decide as a matter of law whether the constitutional right alleged was clearly established at the time of the violation. *Id.* at 1352. To make this determination, the court must assess "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Vinyard*, 311 F.3d at 1350 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Thus the critical inquiry is "whether the law gave the officer 'fair warning' that his conduct would be clearly unlawful." *Steen*, 809 F. Supp. 2d at 1353.

The Eleventh Circuit has recognized two approaches in ascertaining whether a constitutional right was clearly established in the context of excessive force claims. The first "looks at the relevant case law at the time of the violation; the right is clearly established if 'a concrete factual context [exists] so as to make it obvious to a reasonable government actor that his actions violate federal law.'" *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1333 (11th Cir. 2008)). "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Steen*, 809 F. Supp. 2d at 1353 (quoting *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009)). To provide sufficient notice to a government official, the case law must present factual circumstances that are "materially similar" and "not fairly distinguishable." *Id.* Though a case directly on point is not a prerequisite, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). Furthermore, only decisions by the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, and the Florida Supreme Court may constitute precedent clearly establishing a constitutional

right in this case.  *See Steen*, 809 F. Supp. 2d at 1353.

The alternative method "looks not at case law, but at the officer's conduct, and inquires whether that conduct 'lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the lack of fact-specific case law.'" *Fils*, 647 F.3d at 1291 (quoting *Vinyard*, 311 F.3d at 1355).  This method, known as the "obvious clarity" approach, is a "narrow exception" to the general reliance on case law for determining clearly established rights. *Steen*, 809 F. Supp. 2d at 1354.  As described by the Eleventh Circuit, "[c]oncrete facts are generally necessary to provide officers with notice of the 'hazy border between excessive and acceptable force.'  But, where the officer's conduct is so outrageous that it clearly goes 'so far beyond' these borders, qualified immunity will not protect him even in the absence of case law." *Id.* (quoting *Fils*, 647 F.3d at 1291–92).  Under this standard, force is deemed excessive where it "violates 'some broad statements of principle in case law [that] are not tied to particularized facts.'" *Id.* (quoting *Vinyard*, 311 F.3d at 1351).  To qualify as a broad principle clearly establishing the , the principle "must do so 'with obvious clarity' to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Vinyard*, 311 F.3d at 1351.  Not surprisingly, this standard is a difficult one to meet. *Id.*

In support of her contention that the complaint alleges the violation of a clearly established right, Ms. Belizaire first cites the Supreme Court's decision in *Tennessee v. Garner* as precedential support.  In *Garner*, a police officer confronted an unarmed, fleeing individual suspected of home invasion.  *See Tennessee v. Garner*, 471 U.S. 1, 3 (1985).  Upon a warning from the officer to halt, the suspect began climbing a fence in an effort to escape. *Id.* at 4.

Believing that the suspect would avoid capture if he climbed the fence, the officer then fired at the suspect, fatally wounding him.  Evaluating the case under the objective reasonableness standard, the Court held that it is not constitutionally unreasonable for a police officer to use deadly force against a fleeing suspect "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* at 11. Thus,

> if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11–12.

In addition, Ms. Belizaire points to two other cases from the Eleventh Circuit that found qualified immunity to be inappropriate where police used deadly force without warning against a non-fleeing individual who did not pose a threat.  In *McKinney v. DeKalb County, Georgia*, police officers responded to call from a mother reporting that her adolescent son had locked himself in a room with a knife.  *McKinney v. DeKalb Cnty., Ga.*, 997 F.2d 1440, 1442 (11th Cir. 1993).  Finding the son sitting on the floor of his closet with the knife in his hand, the officers attempted to communicate with the boy but received no response.  *Id.*  When the son placed the knife down and began to rise from the floor, an officer fired five shots at the boy, paralyzing him. *Id.*  In the second case, *Lundgren v. McDaniel*, police entered a video store on the suspicion that a burglary was underway.  *Lundgren v. McDaniel*, 814 F.2d 600, 602 (11th Cir. 1987). Unknown to the officers, the owner of the store was sleeping inside behind a desk.  *Id.* According to the facts accepted by the jury at trial, the officers fired upon the store owner

without provocation when he rose from behind the desk, killing him. *See id.* at 602–03. Ms. Belizaire asserts that both decisions present sufficiently similar factual contexts to the present case as her son was also not fleeing and did not present a threat to officers when he was shot without warning.

The officers in turn first reject Ms. Belizaire's citation of *Garner*. They maintain that *Garner* is distinguishable from the present facts, emphasizing that the case involved the shooting of an unarmed individual who was fleeing and did not pose a threat. The officers contend that *McKinney* and *Lundgren* are dissimilar as well. In neither case were the officers looking for an armed, dangerous felon. Rather, the officers in both cases used deadly force without sufficient provocation or need for such force. Consequently, the officers argue that there is no precedent clearly establishing the constitutional right asserted in this case.

Because Ms. Belizaire has failed to satisfy her burden of alleging the violation of a clearly established constitutional right, the Court finds that the officers are entitled to qualified immunity. First, Ms. Belizaire has not presented, and the Court has not found, case law acknowledging that the right alleged was clearly established. As the officers noted, none of the cases that Ms. Belizaire offered present factual circumstances that are materially similar to the present matter. *Garner* dealt with the use of deadly force against an unarmed, fleeing suspect. Hence, the Supreme Court fashioned its standard in *Garner* for the use of deadly force to prevent the escape of fleeing suspects. *See Garner*, 471 U.S. at 11–12. Here, the complaint concedes that Belizaire was not fleeing at the time of his death. Likewise, *McKinney* and *Lundgren* involved scenarios where officers utilized deadly force against individuals who admittedly did not pose a threat to anyone. *See McKinney*, 997 F.2d at 1443; *Lundgren*, 814 F.2d at 603. In this

case by contrast, Mr. Belizaire had fired at police officers and was believed to be armed during the time that he remained in the vacant lot. Though Mr. Belizaire may not have posed an immediate threat, he did in fact pose a threat.

Indeed, precedent may actually may lend some support to the officers' case. In *Penley v. Eslinger*, the Eleventh Circuit dealt with a case in which a fifteen-year-old boy brought a modified toy gun to school and initiated a standoff with police. *Penley*, 605 F.3d at 845. Presuming the boy to be armed, the police cornered him into a bathroom where he paced back and forth occasionally pointing the weapon at police and at himself. *Id.* at 846. Following failed negotiation attempts, a sniper shot the boy in an effort to protect officers in proximity to the boy as well as other children suspected to be nearby. *See id.* at 847. In concluding that a reasonable officer would have believed that the boy was gravely dangerous, the court held that the use of deadly force was permissible in this context against an armed, non-fleeing individual. *See id.* at 854.

The Court notes that there are some key similarities between *Penley* and the factual circumstances presented here. First, the police in both cases believed the suspects to be armed. Further, while the officers in *Penley* requested that the boy drop his weapon, the court found that the sniper's failure to give a warning about the use of deadly force did not alter its conclusion that the use of such force was objectively reasonable. *See id.* at 854 n.6. Finally, the boy, like Mr. Belizaire, was not fleeing at the time of the shooting.

However, there is also a significant distinction between the two cases. Unlike the facts alleged in the present complaint, the officers in *Penley* faced what they believed to be an immediate threat from the boy. As a result, the situation there may have forced the officers to

-11-

make a quicker decision about how to resolve the standoff without endangering their lives or the lives of any bystanders. In contrast, there are no allegations here that Mr. Belizaire presented an immediate threat to anyone once he reached the vacant lot. In fact, the complaint states that the officers did not shoot Mr. Belizaire until over an hour and a half after the initial confrontation. During the period that Mr. Belizaire remained in the lot before his death, there are no allegations that he ever displayed his weapon or attempted to fire back at the police perimeter. Accordingly, the Court at this stage is not prepared to use *Penley* as a definite endorsement of the officers' actions against Mr. Belizaire. Nevertheless, *Penley* indicates the nebulous state of the law and counters Ms. Belizaire's assertion that she has alleged the violation of a clearly established right.

Due to this vagueness, the Court also concludes that Ms. Belizaire has failed to allege the violation of a broad principle that establishes the law with obvious clarity. In truth, the officers' use of force falls into that "hazy border between excessive and acceptable force" that requires concrete facts to defeat qualified immunity. *See Steen*, 809 F. Supp. 2d at 1354 (quoting *Fils*, 647 F.3d at 1291–92). For these reasons, the Court finds that the officers are entitled to qualified immunity and grants the officers' motion to dismiss.

### B. Exposito's Motion to Dismiss Count IV (Supervisory Liability)

Exposito likewise moves to dismiss Count IV for failure to state a claim of supervisory liability under § 1983, arguing that the complaint lacks sufficient allegations to establish a causal connection between his conduct as chief of police and the officers' shooting of Mr. Belizaire.[2] From this, he concludes that he is entitled to qualified immunity as it is undisputed that he was

---

[2] Exposito also moves to dismiss Count IV on the grounds that Ms. Belizaire has failed to sufficiently allege an underlying constitutional violation by the officers. As discussed below, the Court does not need to address this issue to resolve Exposito's motion to dismiss.

acting within his discretionary authority during the time of the shooting.

In the Eleventh Circuit, supervisory officials "are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). Rather, "[s]upervisors will be held individually liable only if (1) the supervisor personally participates in the underlying violation; or (2) there is a causal connection between the actions of the supervisor and that violation." *Steen*, 809 F. Supp. 2d at 1347. Thus where, as in this case, there are no allegations of personal participation by the supervisor, the plaintiff must establish a causal connection. Such causal connection is traditionally demonstrated when:

> (1) a history of widespread abuse puts the responsible supervisor on notice of the
> need to correct the alleged deprivation and he fails to do so; (2) the supervisor's
> custom and policy results in deliberate indifference to constitutional rights; or (3)
> the facts support an inference that the supervisor directed his subordinates to act
> unlawfully or knew that the subordinates would act unlawfully, and yet he failed
> to stop them from doing so.

*Id.* This type of liability under § 1983 is limited and the "standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

In this case, Ms. Belizaire's complaint attempts to demonstrate both a history of widespread abuse as well as an unofficial custom or policy adopted by Exposito condoning the use of excessive force. To establish a history of abuse, Ms. Belizaire points to thirteen shootings by Miami police that took place under Exposito's tenure as chief of police, six of which were fatal. In fact, Officers Guzman and Diaz were responsible for three of these fatal shootings.

-13-

Additionally, Ms. Belizaire alleges that Exposito obstructed approximately fifty internal affairs investigations, referred to his officers as "predators," and tolerated the use of deadly force through the adoption of his program "Operation Take Back Our Streets." Together, she claims that this conduct constituted an unofficial policy that resulted in deliberate indifference to the constitutional rights of citizens.

Exposito rejects these allegations as unconnected to the shooting of Mr. Belizaire. Specifically, he points out that the complaint fails to allege that any of the prior shootings were ever unjustified or involved the use of excessive force, much less that they resembled in any way the case at hand. Further, he challenges Ms. Belizaire's attempt to link his alleged hindrance of investigations and his description of officers as "predators" to the disputed conduct here. Since the complaint therefore does not allege a causal connection sufficient to assert supervisory liability for the officers' supposed constitutional violation, Exposito insists that he is entitled to qualified immunity.

Even assuming that Ms. Belizaire has adequately stated a claim for a causal connection warranting supervisory liability for the officers' alleged constitutional violation, the Court nevertheless finds that Exposito is entitled to qualified immunity as Mr. Belizaire's alleged constitutional right was not clearly established at the time of the shooting. As discussed in relation to the officers' motion to dismiss, Ms. Belizaire has failed to identify, and the Court is not independently aware of, any precedent clearly establishing that the officers' use of force violated Mr. Belizaire's right to be free from unreasonable seizure. Thus, even if Exposito caused a violation of Mr. Belizaire's Fourth Amendment right through his failure to address a history of widespread abuse or his adoption of a policy tolerating the use of excessive force, the

-14-

violation of that right in the form of the officers' use of force was not clearly unlawful.

Therefore, since Ms. Belizaire fails to allege the violation of a clearly established right, Exposito

is entitled to qualified immunity. *See Bailey v. Hughes*, 815 F. Supp. 2d 1246, 1263–64 (M.D.

Ala. 2011) (holding that prison supervisors were entitled to qualified immunity where an inmate

failed to allege that prison officials violated any of his clearly established constitutional rights);

*Steen*, 809 F. Supp. 2d at 1352–56 (finding that a chief of police was entitled to qualified

immunity for an officer's use of a taser where the plaintiff failed to allege a clearly

unconstitutional use of force by the officer).  Accordingly, the Court grants Exposito's motion to

dismiss.

### C. The City's Motion to Dismiss Count II (Negligent Retention)

Finally, the City moves to dismiss the negligent retention claim in Count II for failure to

state a claim as the officers' actions were committed within the scope of their employment.[3]

Unlike the theory of respondeat superior where an employer faces liability for an employee's acts

committed within the course or scope of employment, the tort of negligent hiring or retention

under Florida law "allows for recovery against an employer for acts of an employee committed

outside the scope and course of employment." *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. Dist.

Ct. App. 1986).  As recognized by the Florida Supreme Court in *Mallory v. O'Neil*, 69 So. 2d

313 (Fla. 1954), the rule as conceived "allowed for recovery based on the negligence of an

employer who knowingly kept a dangerous employee on the premises" and permitted liability

"for an employee's acts committed outside the scope of employment, whether willful, malicious,

---

[3] The City also moves to dismiss Count II on the grounds that Ms. Belizaire has failed to sufficiently allege an underlying tort.  As discussed below, the Court does not need to address this issue to resolve the City's motion to dismiss.

or negligent, where the acts trespassed against the rights of someone legally on the employer's premises." *Garcia*, 492 So. 2d at 438. Thus section 317 of the Restatement (Second) of Torts defined the rule as "the employer's duty to exercise reasonable care to control his servant while acting outside the course of his employment, in order to prevent the employee from intentionally harming others and from creating an unreasonable risk of bodily harm to them." *Id.*

In light of this precedent, the City contends that the tort of negligent retention is limited to an employee's acts that are committed outside the scope of employment. Since it is undisputed that the officers were acting within the course of their employment when they shot Mr. Belizaire, the City requests that the Court dismiss Count II. Ms. Belizaire disputes this interpretation of Florida law, arguing instead that negligent retention does not necessarily require that the acts be committed outside the scope of employment. Rather, Ms. Belizaire claims that the tort, in contrast to respondeat superior, allows recovery for acts committed within and without the scope of employment. In essence, she maintains that the scope of employment is irrelevant to the negligent retention analysis.

Because Florida law ties liability under the theory of negligent retention to acts committed outside the scope of employment, the Court grants the City's motion to dismiss. As the Third District Court of Appeal of Florida has stated, "*[b]y its very nature, an action for negligent retention involves acts which are not within the course and scope of employment* and allows recovery even when an employer is not vicariously liable under the doctrine of respondeat superior." *Watson v. City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. Dist. Ct. App. 1989) (emphasis added). Indeed, the Middle District of Florida has recognized that "the alleged acts by employees giving rise to liability for negligent supervision *must occur outside the employees'*

-16-

*scope of employment.*" *Santillana v. Fla. State Court Sys.*, No. 6:09-cv-2095-Orl-19KRS, 2010 U.S. Dist. LEXIS 3049, at *33 (M.D. Fla. Jan. 14, 2010) (emphasis added) (citing *Watson*, 552 So. 2d at 1148). In reaching this decision, the court relied upon the Florida Supreme Court's decision in *Mallory* as well as upon the Restatement's description of the rule. *See id.* at *34. From this determination, the court went on to dismiss a claim for negligent supervision as the plaintiff had not alleged facts allowing the court to conclude that the defendants had acted outside the scope of their employment. *See id.*

Although this Court in *Green v. R.J. Behar & Co.* failed to determine whether negligent retention under Florida law definitely required the pertinent acts to be committed outside the scope of employment, *see Green v. R.J. Behar & Co.*, No. 09-62044-CIV-ALTONAGA/Brown, 2010 U.S. Dist. LEXIS 44304, at *10 (S.D. Fla. May 6, 2010), that decision does not prevent the Court from reaching its holding here. First, the Court in *Green* did not consider the pronouncement of the Third District Court of Appeal in *Watson*. *See id.* at *9–12. Second, the Court's statement in *Green* regarding the status of the law was not necessary to the resolution of that case. Even assuming that acting outside the scope of employment was an element of negligent retention, the Court found in *Green* that the plaintiff adequately stated a claim for negligent retention as she had alleged that the defendant's employee was acting outside the scope of his employment. *Id.* at *11. This conclusion thus obviated any need to ascertain the precise contours of Florida law.

Nevertheless, as stated in *Watson* and reiterated in *Santillana*, Florida law requires that a claim for negligent retention allege acts committed outside the course and scope of employment. As the officers here were acting within the scope of their employment, the Court grants the City's

-17-

motion to dismiss Count II.

### IV.  CONCLUSION

For the above reasons, it is

**ADJUDGED** that

(1)  Defendant Police Officers' Motion to Dismiss Second Amended Complaint **(D.E. No. 35)**, filed on **November 26, 2012**, is GRANTED.  The Court therefore dismisses Counts V, VI, and VII.

(2)  Defendant Miguel A. Exposito's Motion to Dismiss **(D.E. No. 24)**, filed on **October 29, 2012**, is GRANTED.  The Court therefore dismisses Count IV.

(3)  Defendant City of Miami's Motion to Dismiss Second Amended Complaint **(D.E. No. 29)**, filed on **November 2, 2012**, is GRANTED IN PART.  The Court dismisses Count II and will resolve the City's challenges to Counts I and III at a later date.

DONE AND ORDERED in Chambers at Miami, Florida, this /6 day of April, 2013.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

-18-