UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-23327-CIV-MORENO

JULINA BELIZAIRE, as Personal Representative
of the Estate of GIBSON BELIZAIRE, deceased,

      Plaintiff,

vs.

CITY OF MIAMI,

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

One summer afternoon, police officers responded to a 911 emergency call reporting a domestic dispute. The police officers intercepted Gibson Belizaire, who then opened fire at the officers. Belizaire fled with a gun and continued shooting at the police officers, who returned fire, killing Belizaire. Belizaire's mother, Julina Belizaire, filed a state battery claim and a Federal Civil Rights claim under 42 U.S.C. § 1983 against the City of Miami alleging that the City has an unofficial policy condoning the use of excessive force by the police.[1] The Court finds no genuine issue of material fact as to reasonableness of the force used by the police officers who responded to Belizaire's shooting. In addition, there is no evidence of the City having a custom or policy of using excessive force in cases where its officers are being fired upon. Accordingly, the Court GRANTS Defendant's Motion for Final Summary Judgment and dismisses the case.

---

[1] This Court previously granted the individual officers' Motions to Dismiss when the Court dismissed Counts IV, V, V1, and V11 of Plaintiff's Amended Complaint on qualified immunity grounds. The Court found that the officers had not committed any act in violation of a clearly established constitutional right of Gibson Belizaire.

## I. Factual Background

On August 14, 2010, officers of the Miami Police Department answered a 911 call regarding a domestic dispute. Upon approaching the scene, officers intercepted Gibson Belizaire as he fled the home of the dispute. When police intercepted Belizaire at a nearby intersection, Belizaire opened fire at the officers in the middle of a passing funeral procession. Belizaire then retreated to a nearby vacant lot behind an automobile repair shop and remained hidden.

Miami Police Department officers, along with canine units and SWAT teams, established a perimeter around the repair shop and vacant lot. In an attempt to cut Belizaire off from avenues of escape, the police slowly closed the perimeter. Officer Eric Guzman, who lead a search team, first came upon Belizaire. When the Officer first caught sight of Belizaire, Belizaire was pointing a gun towards the officers, so Officer Guzman yelled back to his unit, "gun, gun, gun." At that point, Belizaire emerged from his position and began shooting at the team of officers. The officers took cover and attempted to return fire. Belizaire held onto his firearm and did not surrender or attempt to communicate with the officers. When the police unit closed in and engaged Belizaire again, rounds fired by Officer Guzman and other members of his team struck Belizaire at the top of his head and the side of his temple, killing him.

## II. Legal Standard

Summary judgment is authorized where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential

elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In sum, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

### III. Analysis

Because Count I alleges a state battery claim for excessive force, which is analyzed by considering whether the amount of force used was objectively reasonable under the circumstances, the Court first reviews Court III, a federal Civil Rights claim under 42 U.S.C. § 1983, in order to evaluate the objective reasonableness of the force used against Belizaire. A municipality cannot incur § 1983 liability for injuries caused solely by its employees. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Nor does the fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee infer municipal culpability and causation. *Bd. of County Com'rs v. Brown*, 520 U.S. 397, 403 (1997). Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "It is only when the 'execution of the government's policy or custom . . . inflects the injury' that the municipality may be held liable." *Id.* at 385.

A. **Excessive Force as Violation of the Fourth Amendment (Count III)**

Count III of the Plaintiff's Complaint is a constitutional excessive force claim based on conduct occurring during the course of Belizaire's arrest. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). A claim that law enforcement officials have used excessive force, deadly or not, in the course of an arrest, investigatory stop or other "seizure" of a person is properly analyzed under Fourth Amendment's "objective reasonableness" standard. 42 U.S.C.A. § 1983; *see Graham*, 490 U.S. at 394-95.

For over thirty years, *Tennessee v. Garner* has guided courts' Fourth Amendment reasonableness analysis where officers use lethal force. 471 U.S. 1(1985). The *Garner* Court held that the use of deadly force is more likely reasonable if: (i) the suspect poses an immediate threat of serious physical harm to officers or others; (ii) the suspect committed a crime involving the infliction or threatened infliction of serious harm, such that his being at large represents an inherent risk to the general public; and (iii) the officers either issued a warning or could not feasibly have done so before using deadly force. *Id.* at 11-12. "A mechanical application of these facts, however, is not appropriate." *Penley v. Eslinger*, 605 F.3d 843, 850 (11th Cir. 2010). "Instead, [the court] must be careful to evaluate the reasonableness of an officer's conduct 'on a case-by-case basis 'from the perspective of a reasonable officer on the scene.'" *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993). The Supreme Court has cautioned that "[t][he calculus of reasonableness must

embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. When assessing the reasonableness of an officer's use of force using the *Garner* factors, a court may also consider, for example, the need for the application of force and the relationship between the need and the amount of force used. *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

In the instant matter, the Plaintiff opposes the City's Motion for Final Summary Judgment on Count III and alleges that material facts are in dispute as to whether the City's officers gave Belizaire any command to drop his weapon and the nature of the threat posed by the Plaintiff prior to his death. Even this possible factual dispute is not material because the police officers were returning fire after the decedent repeatedly opened fire upon them.

1. <u>*Garner* Factor 1: Whether the Suspect Posed a Threat of Serious Physical Harm</u>

The first factor of the *Garner* reasonableness analysis asks whether the felon in question posed an immediate threat of serious physical harm to officers or others at the time of an officer's use of force. *Garner*, 471 U.S. at 11. "[U]nder the law, the threat of danger to be assessed is not just the threat to officers at the moment, but also to the officers and other persons if the chase went on." *Pace v. Capobianco*, 283 F.3d 1275, 1280 n.12 (11th Cir. 2002). "[T]he question then is whether, given the circumstances, [the felon] would have appeared to reasonable police officers to have been gravely dangerous." *Id.* at 1281.

Here, Belizaire had committed a series of acts threatening serious harm to others, both innocents and police officers, such that his being at large represented an inherent risk to the general public. *Garner*, 471 U.S. at 11-12. First, brandishing a weapon and shooting wildly at police officers

in the middle of a crowded and busy intersection is a serious and dangerous crime. Moreover, as Belizaire fled the scene, he continued to fire at the officers, consciously dropping a magazine and reloading his weapon. Instead of surrendering, he fled and hid behind an auto body shop with his weapon. He subsequently ambushed the police a second time. Belizaire's wanton and indiscriminate use of his firearm demonstrated a thorough disregard for the lives of the innocents surrounding him and certainly posed significant danger to the officers pursuing him. Given the circumstances, it is objectively reasonable that Belizaire appeared to the City police officers to have represented an inherent risk to the general public. *Garner*, 471 U.S. at 11; *see also Pace*, 283 F.3d. at 1281.

2. *Garner* Factor II: Whether the Use of Deadly Force was Necessary to Prevent Serious Physical Harm to the Officer or to Others

The second factor of the *Garner* analysis instructs the Court to consider the reasonableness of an officer's determination that the use of deadly force was necessary to prevent serious physical harm to the officers or to others. *Garner*, 471 U.S. at 11. As the *Garner* Court held, "[i]t is not constitutionally unreasonable to prevent escape by using deadly force. . .if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm." *Id.* at 11; *see also Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009) (it is objectively reasonable for an officer to use the vicious force exerted by a police dog to subdue and detain an armed suspect).

Here, the police search team's belief that the use of deadly force was necessary to subdue Belizaire was objectively reasonable. It is undisputed that Belizaire was known to be armed and had previously opened fire at the police multiple times. The officers knew that Belizaire was in the

process of attempting to flee and that he had repeatedly demonstrated willingness to open fire at the officers. Under the circumstances, the officers' use of deadly force was objectively reasonable as a means to prevent serious physical harm to the officers and potential nearby civilians.

Plaintiff claims that this Court should analogize the facts in this case to the principles set forth in *Bozemun v. Orum*, 422 F.3d 1265 (11th Cir. 2005), a case in which the Eleventh Circuit held that excessive force was used on detainee in a struggle with correctional officers at a detention facility in Alabama. The Plaintiff's analogy to *Bozemun* is unpersuasive, however. The officers in *Bozemun* entered the decedent's cell to subdue him and after they had him under control, held his head face down in his mattress until he died. *Id.* The Eleventh Circuit found that the continued use of force after the threat posed by the plaintiff had subsided was excessive and used for the purpose of causing harm. *Id.* The circumstances of *Bozemun* are distinguishable from those of the case at bar. The decedent in *Bozemun* was an unarmed detainee in a prison cell with correctional officers; here, a police team struggled with an unsecured, armed man who had repeatedly opened fire at officers in broad daylight in a crowded neighborhood. The circumstances in this case are more akin to those envisioned by the *Graham* Court as it urged lower courts to account for the fact that police officers are forced to make quick judgments about the use of force in circumstances fraught with tense and mercurial elements. 490 U.S. at 397. As the *Graham* Court explained, "reasonableness is dependent on all the circumstances that are relevant to the officer's decision to use deadly force, including the seriousness of the crime. . . police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving." *Id*; *see also Penley v. Eslinger*, 605 F.3d 843, 850 (11th Cir. 2010). Ultimately, the officers' decision to use deadly force in the case was reasonable in light of the fact that they knew Belizaire was armed and dangerous and persisting in

his attempts to flee.

### 3. *Garner* Factor III: Whether a Warning Was Given Prior to the Use of Force

Finally, in determining the reasonableness of an officer's use of force, a court must consider whether the officers in question attempted to issue any warning, and if such warning was feasible. It is important to frame this part of the analysis with an understanding that courts have "'decline[d] ... to fashion an inflexible rule that, in order to avoid civil liability, an officer must always warn his suspect before firing–particularly where such a warning might easily have cost the officer his life.'" *Carr v. Tatengelo,* 338 F.3d 1259, 1269 n.19 (11th Cir. 2003) (citation omitted). Courts respect the constraints on field officers facing unpredictable scenarios in their attempts to subdue armed felons. Courts therefore weigh the prudence and feasibility of police warnings when considering the reasonableness of the use of deadly force. *Id.*

Plaintiff and Defendant contest whether the police team audibly warned Belizaire before using deadly force, but the parties' dispute is actually ultimately irrelevant for the purpose of this case. The warning (or lack thereof) is not a material fact to this manner and is therefore unimportant in consideration of this motion for summary judgment. The Eleventh Circuit has held that an officer acts reasonably in utilizing deadly force until he knows that the felon has been disarmed. *See Jean-Baptiste v. Gutierrez,* 627 F.3d 816 (11th Cir. 2010). In *Jean-Baptiste*, an officer was chasing Jean-Baptiste and his co-felon when the officer came upon Jean-Baptiste waiting to ambush him behind a building. *Id.* at 821. The officer opened fire and shot continuously even after Jean-Baptiste had fallen to the ground. *Id.* The Eleventh Circuit found that the officer reasonably applied deadly force, and that he was "not required to interrupt a volley of bullets until he knew that Jean-Baptiste had

been disarmed." *Id.* at 822. The court said that "[un]til Officer Gutierrez verified that Jean-Baptiste was disarmed, the Officer had no reason to trust that [Jean-Baptist] would not suddenly attempt to do him harm." *Id.*

Applying the same logic to this case, the officers tasked with pursuing Belizaire knew Belizaire to be armed and knew that he had recently opened fire among police officers and civilians. It is therefore immaterial whether Belizaire had been warned. The dispositive facts are that the officers knew Belizaire was still in the possession of a functional weapon, that he was prepared and willing to use it, and that as long as he was still trying to escape, he posed a threat to the officers and the surrounding citizenry.

The parties' dispute regarding Belizaire's hands on his gun and the question of whether he was poised to fire at the officers a third time is also immaterial. The law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon a third time to act to stop the suspect. *See Pace,* 283 F.3d at 1282 (concluding at the summary judgment stage that officers did not use excessive force in shooting a suspect who had stopped his vehicle after a high-speed chase even though the suspect had not aimed the vehicle at officers); *Montoute v. Carr,* 114 F.3d 181, 185 (11th Cir. 1997) ("[A]n officer is not required to wait until an armed and dangerous felon has drawn a bead on the officer or others before using deadly force."). It is material only that the officers evaluating the situation exercised objective reasonableness in determining that timing was of the essence in subduing Belizaire. Proof of a definitive audible warning by the officers only would have further added to the cumulative evidence that the officers' use of force was reasonable in light of the circumstances surrounding the standoff with Belizaire. Ultimately, taking

-9-

each of the *Garner* factors in turn and accepting the uncontested facts as alleged in the pleadings, this Court concludes that there is no genuine issue as to any material fact regarding the reasonableness of the officers' use of deadly force to subdue Belizaire.

### B. Plaintiff's Cause of Action for Battery Under Florida State Law (Count I)

#### 1. Evaluation of the Reasonableness of Force under Florida Tort Law

Count I of the Plaintiff's Complaint is a battery claim of excessive force brought against the City. Because wrongful death does not exist at common law, all claims for wrongful death are created and limited by Florida's Wrongful Death Act. *See Cinghina v. Racik*, 647 So. 2d 289, 290 (Fla. 4th DCA 1994). The Wrongful Death Act ("the Act")—codified at sections 768.16–.26, Florida Statutes—declares and implements "the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer." § 768.17, Fla. Stat. (2007). The Act provides a right of action "[w]hen the death of a person is caused by the wrongful act [or] negligence ... of any person ... and the event would have entitled the person to maintain an action and recover damages if death had not ensued." *Id.* § 768.19.

As the Eleventh Circuit Court of Appeals has succinctly stated, "[p]ursuant to Florida law, police officers are entitled to a presumption of good faith in regard to the use of force applied during a lawful arrest, and officers are only liable for damage where the force used is 'clearly excessive.'" *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006) (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996)). It is well established that "the typical arrest involves some force and

injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2002) (*citing Nolin v. Isbell*, 207 F.3d 1253, 1257–58 (11th Cir. 2000)). It is only when an officer uses an unreasonable amount of excessive force that the "'ordinarily protected use of force is transformed into a battery.'" *Id.* (citation omitted). Courts, however, should not "use hindsight to judge the acts of police officers; we look at what they knew (or reasonably should have known) at the time of the act." *Rodriguez*, F.3d at 1352–53.

The Plaintiff argues that the test of reasonableness under state law is a question of fact for the jury. Plaintiff misconstrues the standard. Instead, like a federal claim under the Fourth Amendment, a state law claim of battery may be evaluated prior to trial pursuant to the facts established in the pleadings. *See, e.g., Davis*, 451 F.3d 759; *see also Lloyd v. Van Tassell*, 384 Fed. Appx. 960, 964 (11th Cir. 2010). Specifically, a court reviews a battery claim for excessive force by evaluating whether the amount of force used was reasonable under the circumstances. *City of Miami v. Albro*, 120 So. 2d 23 (Fla.3d DCA 1960). Law enforcement officers are provided a complete defense to an excessive use of force claim where an officer "reasonably believes [the force] to be necessary to defend himself or another from bodily harm while making the arrest." § 776.05(1), Fla.Stat. (2007).

For the reasons explained in detail in the Count III discussion above, the Defendant City of Miami is entitled to a judgment in its favor on Count I. A battery claim for excessive force is analyzed by considering whether the amount of force used was objectively reasonable under the circumstances. *See Lloyd v. Van Tassell*, 384 Fed. Appx. at 964. Here, the officers charged with

arresting Belizaire exercised an objectively reasonable, and not an excessive, amount of force in their attempts to subdue him. Knowing that Belizaire was armed and willing to use his firearm, knowing that Belizaire had already opened fire twice on officers (once in the presence of civilian bystanders), having given chase to him across a crowded intersection and through an adjacent lot, the officers reasonably used deadly force to subdue him from causing further harm. Law enforcement officers are provided a complete defense to an excessive use of force claim where an officer "reasonably believes [the force] to be necessary to defend himself or another from bodily harm while making the arrest. *City of Miami,* 120 So. 2d at 25. Because the amount of force the officers used was objectively reasonable in light of the circumstances of this case, Plaintiff cannot put forth a claim for battery.

2.  Action Barred by Forcible Felony Statute

Moreover, Plaintiff's claim for battery under state law is barred by Fla. Stat. § 776.085, which was raised as an affirmative defense. This statute provides, in pertinent part,

> **776.085 Defense to civil action for damages; party convicted of forcible or attempted forcible felony.**
> (1) It shall be a defense to any action for damages for personal injury or wrongful death, or for injury to property, that such action arose from injury sustained by a participant during the commission or attempted commission of a forcible felony. The defense authorized by this section shall be established by evidence that the participant has been convicted of such forcible felony or attempted forcible felony, or by proof of the commission of such crime by a preponderance of the evidence.
> (2) For the purposes of this section, the term "forcible felony" shall have the same meaning as in § 776.08.

In pertinent part, § 776.08 provides:

> **776.08 Forcible felony.**
> "Forcible felony" means treason; murder manslaughter; sexual battery; carjacking; home-invasion robbery; robbery; burglary; arson; kidnapping; aggravated assault; aggravated battery...and any other felony which involves the use or threat of physical force or violence against any individual.

Here, Belizaire was killed by the police during his commission of a "forcible felony" as defined in § 776.08. It is undisputed that Belizaire was shot in the process of fleeing from a forcible felony and had not yet reached a place of temporary safety. *See Johnson v. Niehus*, No. 11–12003, 2012 WL 4901137 (11th Cir. Oct.16, 2012) (deputy sheriffs' use of deadly force was objectively reasonable since officers had probable cause to believe that fleeing felon had committed aggravated assault and that their lives were in grave danger); *see also Parker v. State*, 570 So. 2d 1048, 1051 (Fla. 1st DCA 1990). Belizaire committed aggravated assault by shooting his firearm at multiple police officers. Plaintiff is thereby statutorily barred from recovering for Belizaire's personal injuries. *See Whittier v. City of Sunrise*, 395 Fed. Appx. 648 (11th Cir. 2010) (fleeing felon incurred his injuries while committing aggravated assault such that his representative was statutorily barred from recovering for felon's personal injuries).

### C.   <u>Municipal Liability for the City of Miami</u>

The City cannot be held liable as a municipality because Plaintiff Julina Belizaire fails to demonstrate that the City has an unofficial policy condoning the use of excessive force by its police officers. A city may be held liable under 42 U.S.C. § 1983 if a plaintiff's injury was inflicted

pursuant to a policy of the city. *See Monell*, 436 U.S. at 694. To establish a § 1983 violation here, Plaintiff Belizaire needed either to identify an unconstitutional policy adopted by the City in regards its police officers' use of force or to plead facts showing that the City had subjective knowledge of an unofficial systemic practice or custom of unconstitutional conduct at the jails and failed to act. *See Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003).

Even assuming, *arguendo*, that the Plaintiff sufficiently identified an excessive use of force in this instance by City officers, her allegations, liberally construed, do not raise a claim of an unconstitutional custom or policy. Even if the Plaintiff had established improper conduct on behalf of the officers in their efforts to control Belizaire during his shooting episodes, the Plaintiff failed to demonstrate that either (1) actions of Miami police officers were officially sanctioned or ordered by the City; or (2) the officers' actions resulted from an unofficial custom or practice of the City, as shown through the repeated acts of a final policymaker. *Grech*, 335 F.3d at 1329. Courts in this district have determined that neither an individual police officer nor even the Director of the Miami-Dade County Police Department is a final policy-maker for the local government. The final policy-making authority for the City of Miami rests solely with the Office of the Mayor or City Commissioners. *Wilson v. Miami-Dade*, No. 04-23250, 2005 WL 3597737 at *8-*10 (S.D.Fla. Oct. 11, 2005) (granting motion to dismiss based on failure to plead that the Board or Manager were responsible for the alleged violations). Plaintiff Belizaire has not shown how a final policy-maker contributed to actions of the officers involved in the death of her son. Moreover, she fails to demonstrate the existence of an illicit custom so widespread as to constitute the force of law. *Grech*, 335 F.3d at 1329. Liberally construed, the record indicates that Gibson Belizaire's death was not the

consequence of an unofficial custom, but rather, the result of split-second decision-making in the middle of a firefight in which police officers of the City were protecting themselves and surrounding civilians from an armed and trigger-happy felon. Plaintiff Belizaire has thus failed to state a claim for a 42 U.S.C. § 1983 violation. *Canton*, 489 U.S. at 385.

### IV. Conclusion

This Court finds that the officers' use of deadly force to stop Belizaire's escape and shooting episodes was objectively reasonable, and furthermore, the Plaintiff has failed to prove that the City of Miami had an "informal" policy regarding deadly force tolerating excessive force in violation of Belizaire's Fourth Amendment rights. Therefore Summary Judgment in favor of the City of Miami is GRANTED and this case is DISMISSED. All pending motions and deadlines are terminated.

DONE AND ORDERED in Chambers at Miami, Florida, this 24th day of October, 2013.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record